# UNITED STATES DISTRICT COURT
for the
Southern District of California

**FILED**

Jan 31 2025

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    s/ VeronicaCota    DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>iPhone Cellphone<br>Model: 15 Pro<br>Seized as FP& F: 2025255200005502 Item: 002 | )<br>)<br>)<br>)<br>)<br>) |

Case No.    25MJ8079

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-5, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Fernando Quiroz*
*Applicant's  signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date:    01/31/2025
*Judge's signature*

City and state:  El Centro, California    HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-5
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-5:**            iPhone Cellphone
            Model: 15 Pro
            Seized as FP& F: 2025255200005502 Item: 002
            Seized from Omar Antonio ARIAS-Hernandez
            **(Target Device #5)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**
### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-5 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of December 16, 2024, up to and including January 16, 2025, and is limited to the following:

a.    tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.    tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.    tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.    tending to identify the user of, or persons with control over or access to, the Target Device;

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

1

2                                            **AFFIDAVIT**

3          I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn,

4    depose and state as follows:

5                                        **INTRODUCTION**

6          1.    I submit this affidavit in support of an application for warrant(s) to search

7    the following electronic device(s):

8    **A-1:**                    iPhone Cellphone
9                                Model: 15 Pro max
10                               Seized as FP& F: 2025255200005501 Item: 002
11                               Seized from Oscar Martin ROBLES-De La Mora
                                 **(Target Device #1)**

12   **A-2:**                    iPhone Cellphone
13                               Model: SE
14                               Seized as FP& F: 2025255200005501 Item: 003
15                               Seized from Oscar Martin ROBLES-De La Mora
                                 **(Target Device #2)**

16   **A-3:**                    iPhone Cellphone
17                               Model: 15 Pro max
18                               Seized as FP& F: 2025255200005501 Item: 004
19                               Seized from Hector CARMONA
                                 **(Target Device #3)**

20   **A-4:**                    Motorola Cellphone
21                               Model: Moto G22
22                               Seized as FP& F: 2025255200005501 Item: 005
23                               Seized from Jose Gumaro CORONA-Torres
                                 **(Target Device #4)**

24   **A-5:**                    iPhone Cellphone
25                               Model: 15 Pro
26                               Seized as FP& F: 2025255200005502 Item: 002
27                               Seized from Omar Antonio ARIAS-Hernandez
                                 **(Target Device #5)**

28

1

**A-6:**        Redmi Cellphone
              Model: Unknown
              Seized as FP& F: 2025255200005502 Item: 003
              Seized from Jesus Hernesto LANCON-Chavarria
              **(Target Device #6)**

**A-7:**        Huawei Cellphone
              Model: Unknown
              Seized as FP& F: 2025255200005502 Item: 004
              Seized from Brandon Jael VACA-Gonzalez
              **(Target Device #7)**

as further described in Attachments A-1 to A-7, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.      The requested warrant relates to the investigation and prosecution of Omar Antonio ARIAS-Hernandez (ARIAS), Oscar Martin ROBLES-De La Mora (ROBLES), and Hector Alexis CARMONA (CARMONA) for transportation of illegal aliens Jose Gumaro CORONA-Torres (CORONA), Jesus Hernesto LANCON-Chavarria (LANCON) and Brandon Jael VACA-Gonzalez (VACA) (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from ARIAS, ROBLES, CARMONA and the Material Witnesses on or about January 3, 2025, incident to the arrest of ARIAS, ROBLES, CARMONA and the Material Witnesses. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.      Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents.  Dates and times are approximate.

**EXPERIENCE AND TRAINING**

4.    I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8, 18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5.    I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.    Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California.  I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities.  Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point

operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9.      This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a.      tending to indicate efforts to smuggle aliens from Mexico into the United States;

b.      tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.      tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.      tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.      tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

10.     On January 15, 2025, Border Patrol Agents - Intelligence assigned to the El Centro Sector Intelligence Anti-Smuggling Unit Group #1 and Group #2 (ASU) were conducting surveillance in Calexico, California.  At approximately 2:08 p.m., Border Patrol Agent (BPA) J. Machado, who was operating the Calexico Border Patrol Station Remote Video Surveillance System (RVSS), observed four suspected illegal aliens exit the north bank of the All-American Canal and begin travelling northbound through the agricultural field towards Carr Road.

11.    The four individuals reached Carr Road and concealed themselves in the brush. Agents observed a vehicle, later identified as a Honda Odyssey, travel to Carr Road towards the location of where the four individuals were concealing themselves. The four individuals emerged from hiding, and the Honda approached them, pulled over and came to a complete stop. All four individuals ran to the Honda and entered the rear seat of the Honda. Once all of them were inside of the Honda, the Honda merged back onto Carr Road and continued travelling westbound.

12.    The Honda travelled from Carr Road to the Cardenas parking lot, located in Imperial Avenue, Calexico, California. Shortly after the Honda parked, a gray Jeep Gladiator (Jeep) bearing California license plates parked directly in front of the Honda. The four individuals exited the back seat of the Honda and one by one walked away from the Honda and entered the Jeep. After the four individuals exited the Honda and entered the Jeep, ASU Agents terminated surveillance on the Honda and initiated mobile surveillance on the Jeep.

13.    The Jeep then exited the Cardenas parking lot and travelled to a residence on Jackrabbit Drive and parked in the driveway. After parking, the driver, later identified as Omar Antonio ARIAS-Hernandez (ARIAS), exited the Jeep and entered the residence. ARIAS then emerged from the residence being followed by a male, later identified as Jose Gumaro CORONA-Torres (CORONA). ARIAS and CORONA entered a white Chevrolet Tahoe (Tahoe) bearing California license plates that was parked in front of the residence then began travelling away from the residence. ASU Agents continued surveillance on the Jeep and residence, while additional ASU Agents initiated mobile surveillance on the Tahoe and watched as it travelled to the Imperial Valley Mall.

14.    At the Imperial Valley Mall, the Tahoe parked in the ARCO Gas Station parking lot, located at Dogwood Road. ARIAS then exited the Tahoe, walked to a black Toyota Corolla (Toyota) bearing California license plates that was in the parking lot, and briefly spoke to the driver. Afterwards, ARIAS returned to the Tahoe and CORONA exited the Tahoe, walked to the Toyota and entered the back seat of the Corolla. The Toyota,

which was now carrying CORONA, exited the Imperial Valley Mall and travelled northbound on Dogwood Road. Before reaching Aten Road, ASU Agents positioned their unmarked Service vehicles behind the Toyota and activated the emergency lights and sirens of their unmarked Service vehicles in order to conduct a vehicle stop and perform an immigration inspection on all occupants inside of the Toyota.

15.     After the Toyota came to a complete stop, ASU Agents approached the Toyota with Border Patrol markings and insignia fully visible and identified themselves as Border Patrol Agents to the driver, later identified as Oscar Martin ROBLES-De La Mora (ROBLES), the front seat passenger, later identified as Hector Alexis CARMONA (CARMONA), and CORONA. BPA-I S. Ley questioned ROBLES as to his citizenship. ROBLES stated that he was a United States Citizen. BPA-I J. Bourque questioned CARMONA as to his citizenship. CARMONA stated that he was a United States Citizen. SBPA A. Mills questioned CORONA as to his citizenship. CORONA initially denied being in the United States illegally but retracted his statement and then admitted to being a citizen of Mexico in the United States illegally. ROBLES, CARMONA and CORONA were placed under arrest.

16.     After approximately 20 minutes, the Tahoe returned to Jackrabbit Drive and again parked in front of the residence on the street. ARIAS exited the Tahoe, walked to the Jeep, opened the door, leaned inside, then shut the Jeep door and walked into the residence. ARIAS continued to walk in and out of the residence while pacing around the Jeep and the front yard. After approximately 30 minutes, ARIAS walked out of the residence with three minor children and placed them inside of the Tahoe. ARIAS then walked back inside of the residence. At this time, ASU Agents approached the residence with Border Patrol markings and insignia fully visible and announced themselves as Border Patrol Agents to ARIAS as he walked out of the residence. SBPA-I M. Clinton questioned ARIAS as to his citizenship and involvement in alien smuggling. ARIAS stated he was a United States Citizen. ASU Agents observed that the four suspected illegal aliens were still inside of the Jeep. The four individuals, later identified as Jesus Hernesto LANCON-Chavarria

(LANCON), Jessica Josselin MENDEZ-Apaseo (MENDEZ-Apaseo), Tiodulo MENDEZ-Rivera (MENDEZ-Rivera), and Brandon Jael VACA-Gonzalez (VACA), were ordered out of the Jeep and questioned as to their citizenship. LANCON, MENDEZ-Apaseo, MENDEZ-Rivera, and VACA all admitted to being a citizens of Mexico in the United States illegally. LANCON, MENDEZ-Apaseo, MENDEZ-Rivera, and VACA admitted that they made the illegal entry by climbing the border fence in an area other than through a designated Port of Entry.

17.    At this time, a female individual exited the residence. ASU Agents determined that the female was also a United States Citizen and resided at the residence, ASU Agents requested and were granted permission to enter the residence and search for additional illegal aliens. No additional illegal aliens were found at the residence. ARIAS, LANCON, MENDEZ-Apaseo, MENDEZ-Rivera, VACA and the female individual were placed under arrest and were transported to the Calexico Border Patrol Station for further processing.

18.    At the Border Patrol station, ROBLES was read his Miranda rights and agreed to make a statement without the presence of an attorney. ROBLES said that he is a citizen of Mexico. ROBLES has a Legal permanent resident card to live and work in the United States legally. ROBLES stated he started today working at Jet Harvesting Company as a tractor driver when his supervisor asked him to pick up another company worker at the AM/PM gas station by the Imperial Valley Mall. ROBLES stated he was traveling with his son in law to pick-up this unknown coworker. ROBLES stated they contacted the unknown male, but he does not remember how he got inside of his car or where he came from. ROBLES stated they were in route to Westmorland to work in the fields since their shift starts at 7:00 p.m. ROBLES stated the Toyota Corolla that he was driving belongs to him.

19.    CARMONA was read his Miranda rights and agreed to make a statement without the presence of an attorney. CARMONA said he is a United States citizen. CARMONA stated he was going to start work tomorrow at a field harvesting company. CARMONA's supervisor "Vaquero" asked him to pick up another company worker at an AM/PM gas station by the Imperial Valley Mall. CARMONA stated he was traveling with

his father-in-law to pick this unknown coworker up. CARMONA stated he asked his father-in-law for a ride to pick up the co-worker named Jose.  CARMONA stated they met with Jose, he got off a white suburban and then got inside of his father in laws car. CARMONA stated he has been arrested for alien smuggling five times when he was a juvenile.

20.    Material Witness CORONA-Torres stated he is a citizen of Mexico. CORONA-Torres stated that he does not have any legal documents allowing him to live, work or remain in the United States legally. CORONA-Torres stated he made arrangements with an unknown smuggler to be smuggled into the United States and that he was to pay $10,000 USD to be illegally smuggled into the United States. CORONA-Torres stated that he illegally entered the United States today by jumping the International Border Fence (IBF) with a ladder near Mexicali.

21.    Material Witness LANCON-Chavarria stated that he was born in Mexicali, Baja California, Mexico. LANCON was going to pay a fee of $5,000 to be smuggled to Calexico. Material Witness VACA-Gonzalez stated he is a citizen of Mexico. VACA stated that he does not have any legal documents allowing him to live, work or remain in the United States legally.  VACA stated that he was to pay an unknown amount in U.S. Dollars to be illegally smuggled into the United States.  VACA stated that he illegally entered the United States today by using a ladder on the wall near Mexicali. VACA stated he was going to Los Angeles.

22.    During a search incident to arrest of ARIAS, ROBLES, CARMONA and the Material Witnesses, seven cellphones were found: two black iPhones (Target Device #1 and Target Device #2) were found on ROBLES' person by BPA A. Mills and ROBLES claimed ownership of both cellphones. A Motorola cellphone (Target Device #3) was found on CORONA's person by BPA A. Mills and CORONA claimed ownership of this cellphone. An iPhone cellphone (Target Device #4) was found on CARMONA's person by BPA A. Mills and CARMONA claimed ownership of this cellphone. A black iPhone (Target Device #5) was found on ARIAS' person by BPA A. Botello and ARIAS claimed

ownership of this cellphone. A Huawei cellphone (Target Device #6) was found on VACA's person by BPA S. Ley and VACA claimed ownership of this cellphone. A Redmi cellphone (Target Device #7) was found on LANCON's person by BPA A. Botello and LANCON claimed ownership of this cellphone. All cellphones were seized as evidence.

23.    I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement.  In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event.  Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts.  Given this, I respectfully request permission to search the Target Devices for data beginning on December 16, 2024, up to and including January 16, 2025, the day after the arrest of ARIAS, ROBLES, CARMONA and the Material Witnesses.

**METHODOLOGY**

24.    It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be

acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

25.    Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

26.    Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

## CONCLUSION

27.    Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that ARIAS, ROBLES, CARMONA and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by ARIAS, ROBLES, CARMONA, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Fernando Quiroz*

Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 31st day of January, 2025.

03:26 p.m.

HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

## <u>ATTACHMENT A-1</u>
### PROPERTY TO BE SEARCHED

The following property is to be searched:

<u>**A-1**</u>:               iPhone Cellphone
                   Model: 15 Pro max
                   Seized as FP& F: 2025255200005501 Item: 002
                   Seized from Oscar Martin ROBLES-De La Mora
                   **(Target Device #1)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT A-2**
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**          iPhone Cellphone
              Model: SE
              Seized as FP& F: 2025255200005501 Item: 003
              Seized from Oscar Martin ROBLES-De La Mora
              **(Target Device #2)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT A-3**
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**          iPhone Cellphone
          Model: 15 Pro max
          Seized as FP& F: 2025255200005501 Item: 004
          Seized from Hector CARMONA
          **(Target Device #3)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**                 Motorola Cellphone
                 Model: Moto G22
                 Seized as FP& F: 2025255200005501 Item: 005
                 Seized from Jose Gumaro CORONA-Torres
                 **(Target Device #4)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT A-5**
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-5:**         iPhone Cellphone
              Model: 15 Pro
              Seized as FP& F: 2025255200005502 Item: 002
              Seized from Omar Antonio ARIAS-Hernandez
              **(Target Device #5)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-6
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-6:**        Redmi Cellphone
Model: Unknown
Seized as FP& F: 2025255200005502 Item: 003
Seized from Jesus Hernesto LANCON-Chavarria
**(Target Device #6)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-7
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-7:**          iPhone Cellphone
                  Model: 15 Pro
                  Seized as FP& F: 2025255200005502 Item: 004
                  Seized from Brandon Jael VACA-Gonzalez
                  **(Target Device #7)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**
### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-5 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of December 16, 2024, up to and including January 16, 2025, and is limited to the following:

a.      tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.      tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.      tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.      tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.      tending to identify the user of, or persons with control over or access to, the Target Device;

f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.